UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TOWN OF WESTBOROUGH, by and through its Select Board,<br><br>Plaintiff,<br><br>v.<br><br>NORTHLAND TPLP LCC,<br><br>Defendant. | Case No. 22-cv-11428-DJC |

### MEMORANDUM AND ORDER

**CASPER, J.**                                                          **October 31, 2022**

**I.   Introduction**

Plaintiff Town of Westborough ("Westborough") filed this lawsuit in Worcester Land Court against Defendant Northland TPLP LCC ("Northland") seeking declaratory judgment pursuant to Mass. Gen. L. c. 231A, § 1 and injunctive relief under Mass. Gen. L. c. 185 § 25 to enjoin Northland from violating Mass. Gen. L. c. 40B, §§ 20–23.  D. 1-1.  Northland removed the matter here, invoking federal question jurisdiction.  D. 1.  Westborough has moved to remand the matter to state court, D. 8.[1]  For the reasons stated below, the Court ALLOWS Westborough's motion.

---

[1] After the motion hearing, Northland filed a motion for leave to file a post-hearing memorandum, D. 17.  The Court ALLOWS that motion *nunc pro tunc* and considered that memorandum, D. 17-1, in the resolution of the motion for remand.

1

## II.   Standard of Review

### A.   Motion for Remand

In considering a motion to remand, the Court must assess whether it "would have had original jurisdiction of the case had it been filed in [this] court." BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4, 132 F.3d 824, 832 (1st Cir. 1997) (quoting Grubbs v. General Elec. Credit Corp., 405 U.S. 699, 702 (1972)) (internal quotation mark omitted).  With removal, the defendant has the burden of establishing that removal to the district court is proper.  Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999).  The defendant "must . . . make a 'colorable' showing that a basis for federal jurisdiction exists."  Id. (quoting BIW Deceived, 132 F.3d at 832).

## III.   Factual Background

The property at issue, The Residences at Westborough Station, ("Westborough Station"), is a 120-unit housing complex constructed in a single-family zoning district pursuant to Mass. Gen. L. c. 40B §§ 20–23.  D. 1 ¶ 9; D. 1-1 ¶¶ 2, 4, 32–33.

### A.   Mass. Gen. L. c. 40B

Mass. Gen. L. c. 40B "was enacted to provide relief from exclusionary zoning practices which prevented the construction of badly needed low and moderate income housing."  Zoning Board of Appeals of Wellesley v. Ardemore Apts. L.P., 436 Mass. 811, 814 (2002) (internal citation and quotation marks omitted).   Under Chapter 40B, low or moderate income housing is defined as "any housing subsidized by the federal or state government under any program to assist the construction of low or moderate income housing as defined in the applicable federal or state statute, whether built or operated by any public agency or any nonprofit or limited dividend organization."  Mass. Gen. L. c. 40B § 20.  Chapter 40B is a comprehensive permit statute, which

permits developers to construct affordable multi-family housing in single-family housing zoning districts where there is a local shortage of affordable housing as defined by Mass. Gen. L. c. 40B §§ 20, 23. See Ardemore, 436 Mass. at 812. Developers building under Chapter 40B submit applications to the local zoning board, and, if an application is denied, the developer may appeal to the Housing Appeals Committee ("HAC"). Mass. Gen. L. c. 40B § 22. The HAC conducts a *de novo* review of the zoning board's decision to determine "whether a local zoning board's decision is 'reasonable and consistent with local needs.'" Ardemore, 436 Mass. at 815 (quoting Mass. Gen. L. c. 40B, § 23). "If HAC finds that the decision of the local board is not justified it may direct the local board to issue a comprehensive permit." Ardemore, 436 Mass. at 815 (quoting Mass. Gen. L. c. 40B, § 23).

**B.     Westborough Station**

In 1988, a developer, CMA, Inc. ("CMA"), submitted an application to the Westborough Zoning Board of Appeals to construct housing under the comprehensive permit statute, Mass. Gen. L. c. 40B §§ 20–23. D. 1-1 ¶ 4. After the Westborough Zoning Board of Appeals voted to deny CMA's application, it appealed to the HAC, which ordered the issuance of a comprehensive permit under Mass. Gen. L. c. 40B §§ 20–23 for no more than 120 housing units on June 25, 1992. D. 1-1 ¶¶ 6–7. After the HAC issued its decision, but prior to the Westborough Zoning Board's issuance of a comprehensive permit, Avalon Properties, Inc. ("Avalon") sought to purchase the property from CMA and it proposed a modified design for the 120-unit structure. D. 1-1 ¶¶ 8–11. Westborough and Avalon, in a Joint Status Report and Recommendation submitted to the HAC, agreed that Avalon's proposal complied with the HAC's June 25, 1992 decision and requested that the HAC issue a final comprehensive permit. D. 1-1 ¶ 11. On July 20, 1994, the HAC issued a comprehensive permit and an order approving the transfer of the permit from CMA to Avalon

3

("the HAC's 1994 Order"). D. 1-1 ¶ 12–13; D. 1-1 at 71. On December 16, 1994, CMA conveyed title of the property to Avalon. D. 1-1 ¶ 14.

As required by Mass. Gen. L. c. 40B, on December 10, 1996, Avalon executed a regulatory agreement with the Massachusetts Housing Financing Agency ("MHFA"). D. 1-1 ¶ 19; Mass. Gen. L. c. 40B § 20. This agreement provided that "not less than [twenty] [percent] of the units shall be rented to low income persons." D. 1-1 ¶ 19; D. 1-1 at 79. On September 25, 2007, Avalon conveyed the property to Defendant Northland. D. 1-1 ¶ 23. Northland executed an amendment to the regulatory agreement with MHFA, which provided that its obligation to twenty percent of the units to low-income residents would expire on September 25, 2022. D. 1-1 at 107. In September 2021, Northland provided notice to the twenty-four affordable units that it would be converting them to market-rate units in September 2022. D. 1-1 ¶ 26. This lawsuit followed. See D. 1-1.

## IV.  Procedural History

Westborough instituted this action in Worcester Land Court. D. 1-1. Northland removed the action to this Court. D. 1. Westborough has now moved for remand to state court, D. 8. The Court heard the parties on the pending motions and took the matter under advisement. D. 16.

## V.  Discussion

### A.  Motion for Remand

Northland removed this case under federal question jurisdiction, 28 U.S.C. § 1331, pursuant to 28 U.S.C. §§ 1441(a), (c)(1)(A). D. 1 ¶ 4. "Federal district courts have original jurisdiction over what have come to be known as 'federal question' cases, that is, civil actions 'arising under the Constitution, laws, or treaties of the United States.'" Viqueira v. First Bank, 140 F.3d 12, 17 (1st Cir. 1998) (quoting 28 U.S.C. § 1331). "Generally, a claim arises under

federal law within the meaning of [28 U.S.C. § 1331] if a federal cause of action emerges from the face of a well-pleaded complaint." Viqueira, 140 F.3d at 17. "The Supreme Court of the United States has made clear that, in deciding (for removal purposes) whether a case presents a federal 'claim or right,' a court is to ask whether the plaintiff's *claim to relief* rests upon a federal right, and the court is to look only to *plaintiff's complaint* to find the answer." Rossello-Gonzalez v. Calderon-Serra, 398 F.3d 1, 10 (1st Cir. 2004) (quoting Hernandez-Agosto v. Romero-Barcelo, 748 F.3d 1, 2 (1st Cir. 1984)) (emphasis in original).

"Moreover, it is well-settled that 'the plaintiff [is] the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law.'" Rossello-Gonzalez, 398 F.3d at 11 (quoting Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)). "Thus, the burden to prove that a federal question has been pled lies with the party seeking removal." Id. (citing BIW Deceived, 132 F.3d at 831).

"[A] case can 'aris[e] under' federal law in two ways. Most directly, a case arises under federal law when federal law creates the cause of action asserted." Gunn v. Minton, 568 U.S. 251, 257 (2013). "As a rule of inclusion, this 'creation' test admits of only extremely rare exceptions . . . and accounts for the vast bulk of suits that arise under federal law." Id. at 257. "But even where a claim finds its origins in state rather than federal law . . . we have identified a 'special and small category' of cases in which arising under jurisdiction still lies." Id. at 258 (citing Empire HealthChoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006)). To fit into this category, the Court asks do the "state-law claim[s] necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?" Id. at 258 (citing Grable & Sons Metal Prod., Inc., 545 U.S. 308, 314 (2005)). "That is, federal jurisdiction over a state law claim

5

will lie if a federal issue is:  (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  Id.  "Where all four of these requirements are met, . . . jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts."  Id. (citation and internal quotation marks omitted).

Since Northland concedes that on its face, Westborough's complaint does not raise any federal claims,  D. 1-1 (seeking declaratory judgment pursuant to Mass. Gen. L. c. 231A, § 1 and injunctive relief under Mass. Gen. L. c. 185 § 25 to enjoin Northland from violating Mass. Gen. L. c. 40B, §§ 20–23); see D. 12 at 1, the Court turns to whether this is the rare instance where federal question jurisdiction arises from the assertion of state law claims.  Accordingly, the Court turns to Northland's contention that Westborough's complaint "necessarily raise[s]" federal claims under the artful pleading doctrine.  D. 12 at 8–17.

The artful pleading doctrine, also referred to as the "complete preemption doctrine," Lawless v. Steward Health Cara Sys., LLC, 894 F.3d 9, 17 (1st Cir. 2018), is "a corollary of the well-pleaded complaint rule," which does not allow plaintiffs to "defeat removal by omitting to plead necessary federal questions in a complaint."  Rossello-Gonzalez, 398 F.3d at 11 (internal quotation marks and citation omitted).  This doctrine "allows federal court[s] to peer beneath the local-law veneer of a plaintiff's complaint in order to glean the true nature of the claims presented." Lopez-Munoz v. Triple-S Salud, Inc., 754 F.3d 1, 5 (1st Cir. 2014) (citing Rivet v. Regions Bank, 522 U.S. 470, 475 (1998)).  "When such a glimpse reveals that a federal statute entirely displaces the local-law causes of action pleaded in the complaint, a hidden core of federal law sufficient to support federal jurisdiction emerges."  Id. (citing Beneficial Nat'l Bank v. Anderson, 539 U.S. 1,

6

8 (2003)). "In such a case, the plaintiff's claims are deemed 'federal claims in state law clothing and, to defeat artful pleading, the district court can simply 'recharacterize' them to reveal their true basis." Id. (internal quotation marks and citation omitted). The "linchpin" of this analysis "is whether Congress intended that federal law provide the exclusive cause of action for the claims asserted by [Westborough]." Id. "The Supreme Court decisions finding complete preemption share a common denominator: exclusive federal regulation of the subject matter of the asserted claim, coupled with a federal cause of action for wrongs of the same type." Id. (quoting Fayard v. Northeast Vehicle Servs., LLC, 533 F.3d 42, 46 (1st Cir. 2008)).

Invoking this doctrine, Northland argues that Westborough is using Chapter 40B to nullify its subsidized financing terms with MHFA and the United States Department of Housing and Urban Development ("HUD"). D. 12 at 2. Northland points to Chapter 40B's requirement that a comprehensive permit is available only when proposed housing is "subsidized by the federal or state government under any program to assist the construction of low or moderate income housing," and that in this case, its funding implicates federal law. Mass. Gen. L. c. 40B § 20; D. 12 at 10–11. Northland further cites the HAC's 1994 Order stating that "[w]e are confident that the MHFA will ensure that twenty percent of the units are set aside for tenants with incomes no higher than fifty percent of median income, that long-term affordability will be assured, and that the other normal requirements for subsidized housing are met." D. 12 at 5–6; D. 1-1 at 73 n. 1. Northland argues that this text means that the regulatory agreement with the MHFA will determine the finite, "long-term" period that the units will be "set aside" for low-income residents. D. 12 at 6. Since MHFA provided financing for the project pursuant to a federal statute, the Housing and Community Development Act of 1992, and its regulations, Northland argues that the note, mortgage, regulatory agreement and land use restriction agreement that it executed "functions in

7

lieu of a comprehensive permit issued by the Westborough Zoning Board of Appeals." Id. at 6, 9–12.

In Ardemore, 436 Mass. at 812–14, the Supreme Judicial Court considered Chapter 40B's requirement that developers obtain subsidized funding from the MHFA and whether these financing agreements override local zoning law. Similar to the project here, in Ardemore, construction financing for the project was also provided by the MFHA. Id. at 812. The developer argued that it should only be required to maintain affordable units for fifteen years as provided in the subsidized financing agreement. Id. at 813. There, the town argued that the units must be preserved for affordable housing as long as the apartment building is not in compliance with its zoning requirements. Id.

Resolving this dispute does not raise a federal question. See id. at 814 (stating that the court "see[s] nothing in [Chapter 40B] suggest[ing] that the Legislature intended to override local zoning autonomy only to create a fleeting increase in affordable housing stock, leaving cities and towns vulnerable to successive zoning overrides, and the issuance of a never-ending series of comprehensive permits"). Chapter 40B is a comprehensive zoning statute, enacted to "provide relief from exclusionary zoning practices which prevented the construction of badly needed low and moderate income housing." Id. at 814 (internal citation and quotation marks omitted). A developer, therefore, "who obtains the benefits of a comprehensive permit remains subject to the restrictions imposed by [Chapter 40B], so long as the project is not in compliance with local zoning requirements." Id. at 827.

Additionally, the court there noted that the town was not a party to the developer's construction financing agreements and "had no ability to control or influence their terms." Id. at 819. Similarly, here, Westborough is not a party to Northland's regulatory agreement with MHFA,

8

and therefore, had no ability to influence the terms of the subsidized financing for the project. See D. 1-1 at 99–101; see also Narragansett Indian Tribe by & through Narragansett Indian Tribal Historic Pres. Office v. Rhode Island Dep't of Transp., 903 F.3d 26, 32 (1st Cir. 2018) (stating that "the mere fact that a claim or defense requires an explanation of a federal statutory scheme as background does not mean that a complaint 'necessarily raises a stated federal issue'" (quoting Grable & Sons Metal Prods., Inc. v. Darue Engr. & Mfg., 545 U.S. 308, 314 (2005))).  Finally, the court concluded that "[h]ad the legislature intended financing agreements between State or Federal funding agencies and third-party owners to govern the terms of a comprehensive permit, it could have made that explicit." Ardemore, 436 Mass. at 826.

Northland argues that Ardemore is not applicable because the comprehensive permit "made no mention of any expiration," whereas here, the 1994 HAC Order only stated that the affordability restriction would be "long-term," and that the length would be governed by the MHFA. D. 12 at 15. Even assuming *arguendo*, that Northland is correct and that the Westborough Zoning Board deferred to the MHFA to determine the length of time Northland would need to maintain affordable units, it still does not adequately explain how the resolution of this case would involve federal law. See id. at 15–16; D. 1-1 at 1-11 (seeking declaratory judgment and injunctive relief to maintain the affordability requirements at the Westborough Station as to Northland and any successor in interest so long as the property does not comply with Westborough's Zoning Bylaws); Municipality of Mayaguez v. Corporacion Para el Desarrollo del Oeste, Inc., 726 F.3d 8, 15 (1st Cir. 2013) (determining that there was no federal question jurisdiction where "[t]he resolution of this case will have no impact on the ability of HUD or any other federal agency to carry out its business").

Northland also cites to One & Ken Valley Hous. Group v. Maine State Housing Authority, 716 F.3d 218 (1st Cir. 2013), which considered the Section 8 program administered by HUD. D. 12 at 11–12. Under this program, state and local agencies "enter into housing assistance payments . . . contracts with private landlords, and the landlords agree to make units available to Section 8-assisted households." One & Ken Valley Hous. Group, 716 F.3d at 219. Plaintiffs, owners of multifamily housing rental projects, who entered into housing assistance payments contracts with the Maine State Housing Authority, alleged that Maine State Housing Authority "wrongfully refused to grant them certain annual increases in their Section 8 payments." Id. at 220. The First Circuit reasoned that although "this case ultimately turns on a narrow question of contract law, it arises in the context of a complex web of [federal] statues and regulations." Id. Although acknowledging that "[s]ingly, none of these "federal ingredients . . . would be sufficient to establish "arising under" jurisdiction," but collectively they did where "the imposition of liability on Government contractors will directly affect the terms of Government contracts," the "dispute . . . turn[s] on the interpretation of a contract provision approved by a federal agency pursuant to a federal statutory scheme," "the alleged breach occurred only because the contractor was following the federal agency's explicit instructions," "the case presents a pure question of law that will govern numerous cases nationwide," "the federal government has an overwhelming interest in seeing the issue decided according to a uniform principle," and "there is no countervailing state interest in having the dispute adjudicated in a state forum." Id. at 225 (internal quotation marks and citations omitted).

Here, there is not such a mix of "federal ingredients." Northland applied for a comprehensive permit under a state statute, Mass. Gen. L. c. 40B §§ 20–23, not a federal program and any reference to federal subsidy programs there was for the purpose of determining "the

10

threshold eligibility for the developer of a housing project to seek a comprehensive permit,' Ardemore, 436 Mass at 825, a matter not at issue here. Northland fails to meet its burden that a federal issue is "necessarily raised" or that a federal question is "actually disputed." Gunn, 568 U.S. at 258. At best, any connection to federal law is attenuated. See Mayaguez, 726 F.3d at 14–15 (holding that federal issues were not sufficiently substantial to warrant federal question jurisdiction over state law contract claim over block grant program despite disputes over meaning of HUD regulations and allegations of mismanagement of HUD funds).

Northland's argument in its post-hearing memorandum is also unavailing. See D. 17-1. Northland contends that because the Westborough Zoning Board of Appeals failed to issue a comprehensive permit, Westborough will necessarily "step into the role of MassHousing and HUD with respect to regulation of this Project" because it "will almost certainly, by design or in effect, aim to revitalize the Regulatory Agreement and the Land Use Restrict Agreement either as presently constituted, by borrowing its terms, or in some modified form." Id. at 2–3. However, as discussed above, Northland seems to overstate HUD's role in the project and the resolution of this matter's implications for federal law. The 120-unit housing complex at issue was constructed in a single-family zoning district pursuant to Chapter 40B, a state statute. D. 1 ¶ 9; D. 1-1 ¶¶ 2, 4, 32–33. "The reference to Federal or State construction subsidy programs is more properly viewed as a statutory mechanism to determine the threshold eligibility for the developer of a housing project to seek a comprehensive permit." Ardemore, 436 Mass. at 826. It remains the circumstance that this case involves a regulatory agreement that a developer executed with a state agency and will turn upon an interpretation of Chapter 40B in terms of the declaratory and injunctive relief that Westborough seeks. D. 14 at 2-3.

Northland also argues that Westborough's actions violate its right to Due Process under the Fourteenth Amendment, the Takings Clause of the Fifth Amendment and the Contracts Clause of the United States Constitution. D. 12 at 2. To the extent Northland argues it has been deprived of any federal rights, "[t]he existence of a federal defense is not sufficient for removal jurisdiction." Rossello-Gonzalez, 398 F.3d at 10 (citation omitted); Caterpillar Inc., 482 U.S. at 393 (noting that it is "now settled law that a case may *not* be removed to federal court on the basis of a federal defense" (emphasis in original)).

For all these reasons, the Court does not have subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Westborough's motion for remand, D. 8.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge